## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**CASE NO.: 6:19-bk-03529-CCJ**

In Re:                                          **CHAPTER 7**

**Wally Norman Meek, and**
**Cecilia Jeanne Meek**

      **Debtors**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## FILED BY FLAGSTAR

<div style="border:1px solid black">

### NOTICE OF OPPORTUNITY TO

### OBJECT AND REQUEST FOR HEARING

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the attached proof of service plus an additional three (3) days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of Court at 400 West Washington Street, Suite 5100, Orlando, Florida 32801, and serve a copy on the movant's attorney Jason Weber, Esq. at Sirote & Permutt, P.C., 1000 Corporate Drive, Suite 150, Ft. Lauderdale, Florida 33334, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and may grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

</div>

**COMES NOW** Flagstar Bank, FSB, its principals, investors, successors, and/or assigns, if any, (hereinafter "Secured Creditor"), by and through its undersigned counsel of record, Sirote & Permutt, P.C., and moves this Honorable Court to lift the automatic stay in the above-referenced Debtors' Chapter 7 bankruptcy and in support thereof, the Creditor avers as follows:

1. This Honorable Court has jurisdiction to hear these matters and enter final orders pursuant to 28 U.S.C. §§ 157 and 1334; and 11 U.S.C. § 362. The Motion for Relief from Automatic

Stay constitutes a core proceeding and is a contested matter pursuant to Fed. R. Bankr. P. 4001(a) and 9014.

2.  Debtors listed above (the "Debtors") filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code on May 29, 2019.

3.  The Debtors obtained a loan in the amount of $171,905.00 which was evidenced by a Promissory Note dated November 23, 2010 (the "Note").  See "Exhibit A" attached hereto.

4.  Wally Meek and Cecilia Jeanne Meek, husband and wife, executed a Mortgage dated November 23, 2010 (the "Mortgage"), to and in favor of Fidelity First Home Mortgage Company, and granted a first mortgage lien on real property (the "Property") located at 1903 Aster Rd, Rosedale, Maryland 21237-1301, and legally described as:

All that property situate in Baltimore County, State of Maryland, described as:

BEGINNING FOR THE SAME at a point on the northeast side of Aster Road (50 feet wide) as shown on a Plat of Section "A", Rosedale Manor, recorded among the Land Records of Baltimore County in Plat Book GLB No. 18, folio 125, said point of beginning being north 61 degrees 59 minutes 52 seconds west 17.34 feet from a point of curve on the northeast side of said Aster Road; running thence for lines of division the four following courses and distances; north 28 degrees 00 minutes 08 seconds east 100.00 feet, south 61 degrees 59 minutes 52 seconds east 30 feet, south 84 degrees 33 minutes 03 seconds east 48 feet, south 36 degrees 54 minutes 31 seconds west 127.10 feet to intersect the easterly side of the aforesaid Aster Road running thence and binding on the easterly and northeasterly side of said Aster Road by a curve to the left with a radius of 100.70 feet a distance of 38.23 feet (the chord of said arc being north 51 degrees 07 minutes 19 seconds west 38.00 feet) thence binding on the northeast side of Aster Road north 61 degrees 59 minutes 52 seconds west 17.34 feet to the place of beginning.  The improvements thereon being known as NO. 1903 ASTER ROAD.  Subject to a five foot utility easement along the rear lot line of the lot herein described.  Being Lot No. 10, Block "C" as shown on Plat of Rosedale Manor hereinabove referred to.

5.  The Mortgage was recorded at Liber 0030239, Folio 106 of the Public Records of Baltimore County, Maryland.  See "Exhibit B" attached hereto.

6.  Debtors are indebted to Secured Creditor in the amount of $146,749.99 principal balance, plus any additional interest, advances, costs and attorneys' fees advanced by Secured Creditor, pursuant to the loan documents.  See "Exhibit C" attached hereto.

7.  The Debtors have failed to remit payment to Secured Creditor since the installment due on October 1, 2018 and, therefore, the interests of Secured Creditor are not being adequately protected.

8.  Upon information and belief, said property has not been claimed exempt and pursuant to the duly filed Statement of Intentions, the property is being surrendered. The property has not been abandoned by the Trustee.

9.  Secured Creditor maintains that cause exists pursuant to 11 U.S.C. § 362(d)(1) for the automatic stay to be lifted to allow Secured Creditor to pursue in *rem* remedies given that its interests are not being adequately protected due to the failure of the Debtor(s) to make payments prior to the filing of the instant bankruptcy petition and that there is no equity in the subject property for the benefit of unsecured creditors of the estate.

10. Furthermore, Secured Creditor's security interest in the property is being significantly jeopardized by the Debtor(s) failure to make said payments while Secured Creditor is prohibited from pursuing lawful remedies to protect said security interest.

11. Secured Creditor has incurred attorneys' fees of $750.00 and costs of $181.00 as a result of having to file this Motion.  Secured Creditor seeks an award of its fees and costs or, alternatively, leave to seek recovery of its reasonable bankruptcy attorneys' fees and costs in any pending or subsequent foreclosure action.

12. Secured Creditor respectfully requests the Court waives the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3), so Secured Creditor can pursue its in *rem* remedies without delay.

13. Pursuant to 11 U.S.C. § 362(e), Secured Creditor hereby requests that in the event a hearing is necessary that one be held within thirty (30) days.

14. Permitting Movant to offer and provide Debtors with information regarding a potential Forbearance Agreement, short sale, deed in lieu, loan modification, Refinance Agreement, or other loan workout/loss mitigation agreement, and to enter into such agreement with Debtors without further order of the court.

**WHEREFORE**, Secured Creditor respectfully requests that the automatic stay be lifted so that it may pursue *in rem* remedies to protect its security interests in the Debtor(s) property outside of the bankruptcy forum, that the fourteen (14) day stay of the Order Granting Relief pursuant to Bankruptcy Rule 4001(a)(3) be waived, that Secured Creditor be awarded its attorneys' fees and costs for filing this Motion, that in the event a hearing is necessary that one be held within thirty (30) days, that the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code, that Secured Creditor have relief from applicable provisions of FRBP 3002.1 and for such other relief as the Court may deem just and proper.

**I HEREBY CERTIFY** in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing Motion for Relief from the Automatic Stay was mailed, first class postage prepaid and or by Electronic Filing this   18th   day of   June        , 2019.

Respectfully submitted,

/s/Jason A. Weber
Jason A. Weber, Esq.
Fla. Bar No. 0051681
Counsel for Secured Creditor

SIROTE & PERMUTT, P.C.
1000 Corporate Drive, Suite 150
Fort Lauderdale, Florida 33334
Telephone:  (954) 828-1118
Facsimile:  (954) 828-1101
Toll Free:  (800) 826-1699
jweber@sirote.com

Copies furnished to:

***Debtor***
**Wally Norman Meek**
5641 Mary Drive
Daytona Beach, FL 32127

***Joint Debtor***
**Cecilia Jeanne Meek**
5641 Mary Drive
Daytona Beach, FL 32127

**Justin S W McMurray**
Law Offices of Justin McMurray PA
10175 Fortune Parkway, Suite 502
Jacksonville, FL 32256
Email: bk@lojmpa.com

***Trustee***
**Arvind Mahendru**
5703 Red Bug Lake Road
Suite 284
Winter Springs, FL 32708

***U.S. Trustee***
**United States Trustee - ORL7/13**
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

EXHIBIT A

**V1 WBCD LOAN #**

| | |
|---|---|
| | FHA Case No. |

**State of Maryland**

# NOTE

**MIN:**

NOVEMBER 23, 2010                    CATONSVILLE,                    **MARYLAND**
[Date]                                        [City]                                        [State]

1903 ASTER RD, ROSEDALE, MD 21237-1301
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **FIDELITY FIRST HOME MORTGAGE COMPANY, A MARYLAND CORPORATION.**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of **\*\*\*\*\*\*ONE HUNDRED SEVENTY ONE THOUSAND NINE HUNDRED FIVE AND NO/100\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** Dollars (U.S. **$171,905.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND ONE-HALF** percent ( **4.500%** ) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall make a payment of principal and interest to Lender on the **FIRST** day of each month beginning on **JANUARY 1, 2011.** Any principal or interest remaining unpaid on the **1ST** day of **DECEMBER, 2040** will be due on that date, which is called the "Maturity Date."
### (B) Place
Payment shall be made at
**707 BESTGATE RD
ANNAPOLIS, MD  21401**

or at such place as Lender may designate in writing by notice to Borrower.
### (C) Amount
Each monthly payment of principal and interest will be in the amount of U.S.        **$871.02.**    This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
### (D) Allonge to this Note for payment adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box]    ☐ Graduated Payment Allonge        ☐ Growing Equity Allonge
☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY
### (A) Late Charge for Overdue Payments
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000%** ) of the overdue amount of each payment.

### (B) Default
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Maryland Fixed Rate Note - 10/95
Online Documents, Inc.

Initials:
MD8700NY  0804
11-23-2010 10:18

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
WALLY A. MEEK

_____ (Seal)
CECILIA J. MEEK

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

FIDELITY FIRST HOME MORTGAGE
COMPANY

BY: _____

PRINTED NAME: Danielle Howser
Authorized Agent
ITS: _____

FHA Maryland Fixed Rate Note - 10/95
Online Documents, Inc.

Page   2   of   2

MD8700NT   0804
11-23-2010 10:18

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB
NOTE ENDORSEMENT VOID
BY:
DAWN M. MANSELL
SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
FLAGSTAR BANK, FSB
BY:
JEAN R. GARRICK
SENIOR VICE PRESIDENT

00302591106

EXHIBIT B

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-531-1

Return to:
GlobalDataSource
901 Dulaney Valley Rd #602
Towson MD 21204

V1 WBCD LOAN #

———————————— [Space Above This Line For Recording Data] ————————————

Refinance

**State of Maryland**                    **DEED OF TRUST**

| FHA Case No. |
|---|
| |

**MIN:**

THIS DEED OF TRUST ("Security Instrument") is made on  **NOVEMBER 23, 2010.**
The Grantor is  **Wally Meek and Cecilia Jeanne Meek, husband and wife**

("Borrower").

The trustee is **ADELITA A. SHUBERT**

("Trustee").

**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under
this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**FIDELITY FIRST HOME MORTGAGE COMPANY, A MARYLAND CORPORATION**

("Lender") is organized and

existing under the laws of  **MARYLAND,**
and has an address of  **707 BESTGATE RD, ANNAPOLIS, MD   21401.**

Borrower owes Lender the principal sum of  ****ONE HUNDRED SEVENTY ONE THOUSAND NINE
HUNDRED FIVE AND NO/100********************  Dollars (U.S.  **$171,905.00**        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"),
which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
**DECEMBER 1, 2040.**             The beneficiary of this Security Instrument is MERS (solely as
nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with
interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c)

FHA Maryland Deed of Trust - 4/96
Online Documents, Inc.                **Page 1 of 8**                Initials:
                                                                    MDEFHADE 0801
                                                                    11-23-2010  10:18

V1 WBCD LOAN #

the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in   **BALTIMORE**
County, Maryland:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**
**APN #:**

which has the address of **1903 ASTER RD, ROSEDALE**

[Street, City],

Maryland   **21237-1301**      ("Property Address");
      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
   **1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
   **2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

FHA Maryland Deed of Trust - 4/96
Online Documents, Inc.                    **Page   2   of   8**

Initials:

MDEFHADE 0901
11-23-2010 10:18

0030239  108

EXHIBIT "A"

Fee Simple

All that property situate in Baltimore County, State of Maryland, described as:

BEGINNING FOR THE SAME at a point on the northeast side of Aster Road (50 feet wide) as shown on a Plat of Section "A", Rosedale Manor, recorded among the Land Records of Baltimore County in Plat Book GLB No. 18, folio 125, said point of beginning being north 61 degrees 59 minutes 52 seconds west 17.34 feet from a point of curve on the northeast side of said Aster Road; running thence for lines of division the four following courses and distances; north 28 degrees 00 minutes 08 seconds east 100.00 feet, south 61 degrees 59 minutes 52 seconds east 30 feet, south 84 degrees 33 minutes 03 seconds east 48 feet, south 36 degrees 54 minutes 31 seconds west 127.10 feet to intersect the easterly side of the aforesaid Aster Road running thence and binding on the easterly and northeasterly side of said Aster Road by a curve to the left with a radius of 100.70 feet a distance of 38.23 feet (the chord of said arc being north 51 degrees 07 minutes 19 seconds west 38.00 feet) thence binding on the northeast side of Aster Road north 61 degrees 59 minutes 52 seconds west 17.34 feet to the place of beginning. The improvements thereon being known as NO. 1903 ASTER ROAD. Subject to a five foot utility easement along the rear lot line of the lot herein described. Being Lot No. 10, Block "C" as shown on Plat of Rosedale Manor hereinabove referred to.

TAX ID#

V1 WBCD LOAN #

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower.

Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of

FHA Maryland Deed of Trust - 4/96
Online Documents, Inc.                     **Page 3 of 8**                     Initials:
                                                                              MDEFHADE
                                                                              11-23-2010 10:18

V1 WBCD LOAN #

principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.   Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.   Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.   Grounds for Acceleration of Debt.**

**(a)   Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b)   Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)   No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)   Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)   Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.   Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument,

FHA Maryland Deed of Trust - 4/96
Online Documents, Inc.                       **Page   4   of   8**                   Initials: _____
                                                                                       MDEFHADE 0801
                                                                                       11-23-2010  10:18

V1 WBCD LOAN #

foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as

FHA Maryland Deed of Trust - 4/96
Online Documents, Inc.                    **Page 5 of 8**              Initials:
                                                                         MDEFHADE  0801
                                                                       11-23-2010 10:18

V1 WBCD LOAN #

trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of  5.00%  of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**Borrower, in accordance with Subtitle W of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one of more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 18 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument without charge to Borrower and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 18 of this Security Instrument.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Planned Unit Development Rider
☐ Graduated Payment          ☐ Other(s) [specify]

*FHA Maryland Deed of Trust - 4/96*
Online Documents, Inc.                    **Page  6  of  8**                    Initials:

MDEFHADE
11-23-2010 10:18

V1 WBCD LOAN #

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
WALLY N. MEEK

_____ (Seal)
CECILIA J. MEEK

State of MARYLAND
County of BALTIMORE

On this 23rd day of November ,2010, before me,
Pamela Salafia , the undersigned officer, personally
appeared Wally N. Meek and Cecilia Jeanne Meek

(name(s) of person(s) who make acknowledgement), known to me (or
satisfactorily proven) to be the person(s) whose name(s) are
subscribed to the within instrument and acknowledged that they
executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

PAMELA SALAFIA
NOTARY PUBLIC
HOWARD COUNTY
MARYLAND

_____
Notary Public

My Commission Expires 1/20/13

FHA Maryland Deed of Trust - 4/96
Online Documents, Inc.                    Page  7  of  8                    MDEFHADE 0801
11-23-2010 10:18

V1 WBCD LOAN #

STATE OF Maryland                County ss.< Baltimore
                                 (or City of Baltimore)
    I Hereby Certify, that on this 23rd day of November 2010 before me, the
subscriber, a Notary Public of the State of Maryland and for the
County of Howard personally appeared,

                    Shannon Eubanks

the agent of the party secured by the foregoing Security Instrument, and made oath in due form of law
that the consideration recited in said Security Instrument is true and bona fide as therein set forth and
that the actual sum of money advanced at the closing transaction by the secured party was paid over
and disbursed by the party or parties secured by the Security Instrument to the Borrower or to the person
responsible for disbursement of funds in the closing transaction or their respective agent at a time not
later than the execution and delivery by the Borrower of this Security Instrument; and also made oath
that he or she is the agent of the party or parties secured and is duly authorized to make this affidavit.

    AS WITNESS: my hand and notarial seal.

My Commission Expires: 1/20/13

                    Notary Public

                            PAMELA SALAFIA
                            NOTARY PUBLIC
                            HOWARD COUNTY
                            MARYLAND

☐ This is to certify that the within instrument has been prepared under the supervision of a
    Maryland attorney.

                    _____
                    Name:

☐ This is to certify that the within instrument has been prepared by Fidelity First
    Home Mortgage Company
    a party to the instrument

                    _____
                    Name:
                    Title:
                        4080

FHA Maryland Deed of Trust - 4/96
Online Documents, Inc.              **Page 8 of 8**              MDEFHADE 0801
                                                                11-23-2010 10:18

0030239 115

## AFFIDAVIT OF REFINANCING

**STATE OF Maryland, Baltimore To-Wit:**

**I HEREBY CERTIFY,** that on this 23rd day of  November, 2010,
before me, the subscriber, a Notary Public of the State and County aforesaid, personally
appeared Wally  Meek and Cecilia Jeanne Meek, made an oath in due form of law as follows:

Pursuant to Section 12-108 (g), Tax Property Article, Annotated Code of Maryland, the
undersigned does hereby make oath or affirm, under penalties of perjury, that the
following statements are true and correct:

That the undersigned is/are the original mortgagor(s);

That the property herein mortgaged is the principal residence of the undersigned original
mortgage(s); and that the amount of the unpaid principal balance of the debt secured
by the original mortgage or deed of trust that is being refinanced is **$167,148.38**
and is recorded in the Land records of **Baltimore County at Liber No. 24391, Folio 592.**

_____    _____
**Wally Meek**                        **Cecilia Jeanne Meek**

**SUBSCRIBED and SWORN** to before me, _____, on this
23rd day of November, 2010.

My Commission Expires: 1/20/13        NOTARY PUBLIC

PAMELA SALAFIA
NOTARY PUBLIC
HOWARD COUNTY
MARYLAND

0030239 116

V1 WBCD LOAN #

# LICENSEE INFORMATION OR AFFIDAVIT
# FILED IN ACCORDANCE WITH REAL PROPERTY ARTICLE,
# §3-104.1, ANNOTATED CODE OF MARYLAND

## Licensee Information

Maryland Mortgage Lender Name: FIDELITY FIRST HOME MORTGAGE COMPANY

Maryland Mortgage Lender License Number:
Maryland Mortgage Originator Name: DOUGLAS COTTON RICE

Maryland Mortgage Originator License Number:

## Affidavit in Lieu of Maryland Mortgage Lender or
## Maryland Mortgage Originator Licensee Information

Check the box and complete the information for the applicable selection(s) below. As used herein, the term "Loan" means the mortgage loan secured by the security instrument attached hereto.

**Affidavit of Individual Mortgage Originator:**

☐ I,

whose address is

hereby affirm, under the penalties of perjury, that I am the individual who originated the Loan and, in connection therewith, I am exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

**Affidavit of Lender:**

☐ I,

hereby affirm, under the penalties of perjury, that I am the

00302391111

V1 WBCD LOAN #

of

(the "Lender") that made the Loan. The Lender's address is

I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-501 through 11-524, Annotated Code of Maryland.

**Affidavit of Lender (on its own behalf and on behalf of its employee who originated the Loan):**

☐ I,

hereby affirm, under the penalties of perjury, that I am the

of

(the "Lender") that made the Loan. The Lender's address is

I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-501 through 11-524, Annotated Code of Maryland. The employee of the Lender who originated the Loan is exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

**Affidavit of Mortgage Broker (on behalf of its employee who originated the mortgage loan):**

☐ I,

hereby affirm, under the penalties of perjury, that I am the

of

(the "Broker") that brokered the Loan. The Broker's address is

00302391 0081

**V1 WBCD LOAN #**

I am duly authorized by the Broker to execute this affidavit. The employee of the Broker,

(the "Employee"), is the individual who originated the Loan. The Employee, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

I SOLEMNLY AFFIRM, under the penalties of perjury and upon personal knowledge, that the contents of the foregoing paper are true.

_____
                                                                                **DATE**

_____
                                                                                **DATE**

_____
                                                                                **DATE**

BOOK: 41073 PAGE: 250

```
Baltimore County Cir Crt
IMP FD SURE      $40.00
RECORDING FEE    $20.00

TOTAL            $60.00
JLE   LAL
Jan 22, 2019     09:05 am
```

**MARYLAND**
COUNTY OF **BALTIMORE (C)**
LOAN NO.:
WHEN RECORDED MAIL TO: FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH.
208-528-9895

# ASSIGNMENT OF MORTGAGE/DEED OF TRUST

KNOWN ALL MEN BY THESE PRESENTS that for value received, the receipt of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR FIDELITY FIRST HOME MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, assign, transfer, and set over unto **FLAGSTAR BANK, FSB**, located at **5151 CORPORATE DRIVE, TROY, MI 48098**, Assignee, *its successors and assigns*, all Assignor's rights, title and interest in and to that certain Mortgage/Deed of Trust dated **NOVEMBER 23, 2010**, executed and delivered by **WALLY MEEK AND CECILIA JEANNE MEEK, HUSBAND AND WIFE**, Mortgagor/Trustor, to/for the benefit of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR FIDELITY FIRST HOME MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee/Beneficiary, and recorded on **DECEMBER 23, 2010** in Liber **30239** at Folio **106** of the Mortgage Records in the Circuit Court Clerk's office in and for the County of **BALTIMORE (C)**, State of **MARYLAND**.

Property Address: **1903 ASTER RD, ROSEDALE, MD 21237**

TOGETHER with all rights, title and interest, accrued or to accrue under said Mortgage/Deed of Trust.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed on **JANUARY 18, 2019**.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR FIDELITY FIRST HOME MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS**

**REBECCA HIGLEY, VICE PRESIDENT**

STATE OF IDAHO              COUNTY OF BONNEVILLE   ) ss.

On **JANUARY 18, 2019**, before me, **ADDISON RICE**, personally appeared **REBECCA HIGLEY** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR FIDELITY FIRST HOME MORTGAGE COMPANY, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

---
**ADDISON RICE (COMMISSION EXP. 06/15/2024)**
**NOTARY PUBLIC**

```
ADDISON RICE
Notary Public - State of Idaho
Commission Number 20181118
My Commission Expires Jun 15, 2024
```

Page 1 of 1

EXHIBIT C          **UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CASE NO.: 6:19-bk-03529-CCJ**
In Re:                                              **CHAPTER 7**

**Wally Norman Meek, and**
**Cecilia Jeanne Meek**

     **Debtors**
_____/

### AFFIDAVIT IN SUPPORT OF
### MOTION FOR RELIEF FROM STAY

STATE OF _Michigan_ )
COUNTY OF _Oakland_ )

BEFORE ME, the undersigned, Notary Public, personally appeared __Melissa Wallace__,

who is known to me and after being by me first duly sworn, deposes and says the following:

1.    I am making this Affidavit in connection with and support of the Motion for Relief from stay filed by Movant, Flagstar Bank, FSB, its principals, investors (hereinafter "Secured Creditor"), a secured creditor in the above styled bankruptcy proceedings.

2.    Secured Creditor holds the subject Note and Mortgage.

3.    I am familiar with the loan made by Fidelity First Home Mortgage Company to Wally N. Meek and Cecilia J. Meek, which is the basis for Secured Creditor's status.

4.    Flagstar Bank, FSB ("Flagstar") maintains a computerized account of the loan including all receipts disbursements, charges and credits.

5.    The amount of the indebtedness and the nature and extent of default set forth in the motion is derived from said computerized account of the Loan.

6.    I am the _Bankruptcy Specialist_(title) for Flagstar. In that capacity, I have access to said computerized account records.

7.    Said records are made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters, the records are kept in the course of Flagstar's regularly conducted activity and are made by Flagstar as a regular practice.

8.    In connection with this case, I have reviewed the aforementioned computerized account records, the loan documents and other business records of Flagstar.

9.    As of May 29, 2019, the subject loan has an outstanding principal balance of $146,749.99, plus advances made, attorneys' fees and costs, and interest accruing thereon in accordance with the loan documents.

10.    As of May 29, 2019, Debtors have defaulted on payments due to Secured Creditor by failing to make payment due on October 1, 2018 and all subsequent monthly payments.

11.    I have reviewed the documents attached as exhibits to the Motion and they are true and accurate copies of the original documents.

12.    This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Flagstar's books and business records and is intended to show that there is available competent testimony which can be introduced at evidentiary hearing, if necessary.

**FURTHER AFFIANT SAYETH NAUGHT**

The facts stated herein are true. In verification of the same, I subscribed my signature hereto.

Sworn to by me on this 17th day of _June_, 2019.

Affiant **Melissa Wallace**

Sworn to and subscribed before me on this 17th day of _June_, 2019.

Notary Public

My Commission Expires:

MARYANN LOCRICCHIO
Notary Public - State of Michigan
County of Oakland
My Commission Expires Aug 15, 2023
Acting in the County of Oakland